IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| RAYMOND SILVA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>EQUIFAX, INC.,<br><br>　　　　Defendant. | Case No. 19-cv-00262-DKW-WRP<br><br>**ORDER (1) GRANTING APPLICATION TO PROCEED WITHOUT PREPAYMENT OF FEES OR COSTS; AND (2) DISMISSING ACTION WITH LEAVE TO AMEND.**[1] |

On May 24, 2019, Plaintiff Raymond Silva, proceeding pro se, filed an application to proceed *in forma pauperis* ("IFP Application") and a civil complaint against Defendant Equifax, Inc. Dkt. Nos. 1, 3. Because the IFP Application reflects that Silva does not have the ability to pay the filing fee in this case, the Court GRANTS the IFP Application. However, because Silva does not allege a claim in his complaint, this action is DISMISSED with leave to amend.[2]

**I.　The IFP Application**

Federal courts can authorize the commencement of any suit without prepayment of fees or security by a person who submits an affidavit that

---

[1] Pursuant to Local Rule 7.2(d), the Court finds these matters suitable for disposition without a hearing.

[2] The Court subjects each civil action commenced pursuant to 28 U.S.C. § 1915(a) to mandatory screening and can order the dismissal of any claims it finds "frivolous, malicious, failing to state a claim upon which relief may be granted, or seeking monetary relief from a defendant immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

demonstrates an inability to pay. *See* 28 U.S.C. § 1915(a)(1). While Section 1915(a) does not require a litigant to demonstrate absolute destitution, *Adkins v. E.I. Du Pont de Nemours & Co.*, 335 U.S. 331, 339 (1948), the applicant must nonetheless show that he is "unable to pay such fees or give security therefor," 28 U.S.C. § 1915(a).

Here, Silva has made the required showing under Section 1915(a). In the IFP Application, Dkt. No. 3, Silva states that he is retired and receives $946 per month in social security benefits. Further, Silva states that he receives no other income, has $20 in a checking or savings account, and owns no automobile, real property, or financial instruments. In light of these figures, Silva's income falls below the poverty threshold identified by the Department of Health and Human Services' ("HHS") 2019 Poverty Guidelines. *See* HHS Poverty Guidelines, available at: https://aspe.hhs.gov/poverty-guidelines. In addition, Silva has insufficient assets to provide security. As a result, the Court GRANTS the IFP Application, Dkt. No. 3.

## II. Screening

The Court liberally construes the pro se Complaint. *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987). However, the Court cannot act as counsel for a pro se litigant, such as by supplying the essential elements of a claim. *Pliler v. Ford*, 542 U.S. 225, 231 (2004); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

In the Complaint, Dkt. No. 1, Silva asserts that he has "exhausted" his administrative remedies and Equifax has accepted facts set forth in various documents he sent them, but to which they failed to respond. Silva asserts that, through Equifax's non-response, he "states a superior claim upon which relief can be granted…." *Id*. at 4. The Complaint does not otherwise set forth any of the facts supporting Silva's alleged superior claim or otherwise identify the claim. The Complaint provides that this Court's jurisdiction is premised upon diversity.

Attached to the Complaint appear to be the documents to which Silva refers therein. One of those documents states that Silva was the victim of a data breach that occurred at Equifax sometime in 2017. Dkt. No. 1-1 at 3. It is further stated that Silva was injured by the data breach because he does not know who has his personal data. *Id*. It also appears that Equifax was instructed to provide twelve "Proofs of Claim." *Id*. at 3-4.[3] The document concludes by stating that, if Equifax

---

[3]The "Proofs of Claim" are:
    1. Proof of Claim that on September 8, 2017 Equifax, Inc. did NOT report that over 148 Million Americans' personal data housed by Equifax, Inc. had been stolen and/or compromised.
    2. Proof of Claim that Equifax, Inc. did NOT know of said data breach six months before reporting said data breach on September 8, 2017.
    3. Proof of Claim that Equifax, Inc. did NOT intentionally try to cover up the data breach only to be forced to reveal said data breach six months after the breach actually occurred.
    4. Proof of Claim that Equifax, Inc. protected my personal data and did NOT allow my personal data to be breached and stolen by unknown entities.
    5. Proof of Claim that Equifax, Inc. knows exactly where the personal data of 148 Million Americans is.
    6. Proof of Claim that Equifax, Inc. knows exactly who stole the personal data of 148 Million Americans.

fails to provide "Proof of Claim," it will constitute "commercial acquiescence…." *Id*. at 4.   Apparently, Equifax did not respond to Silva because a subsequent document is titled "Affidavit of Certificate of Non-Response."   *Id*. at 8.   Another document is titled "Affidavit and Notice of Default," in which it is stated that Equifax has agreed to the facts stated in the "Proofs of Claim" and Equifax is liable to Silva and 148 million Americans in an amount no less than $75 million.   *Id*. at 13-14.

Put simply, Silva does not assert any claim in the Complaint.   Moreover, he does not even try.   Instead, it appears that Silva believes that he can bring this action because Equifax did not respond to his "Proofs of Claim."   So it is clear, Equifax's non-response to the document Silva sent Equifax does not create an actionable

---

7. Proof of Claim that Equifax, Inc. is NOT liable to the 148 Million Americans whose data was stolen as a result of the data breach at Equifax, Inc. reported on September 8, 2017.
8. Proof of Claim that Equifax, Inc. HAS corrected ALL security lapses and has taken ALL security measures possible to ensure that this data breach will not happen again.
9. Proof of Claim that the U.S. General Accounting Office (GAO) did NOT on September 8, 2018 release a comprehensive report examining the reasons for the massive breach of personal information from Equifax, Inc.
10. Proof of Claim that the U.S. General Accounting Office (GAO) report did NOT summarize an array of errors inside the company, largely related to a failure to use well-known security best practices and a lack of internal controls and routine security reviews.
11. Proof of Claim that through the fraudulent data breach at Equifax, Inc. I have NOT been personally injured and my ability to obtain credit has NOT been negatively affected resulting in economic hardships.
12. Proof of Claim that Equifax, Inc. is NOT liable to me for damages no less than a minimum of $10,000,000.00 Ten Million Dollars including triple damages and costs.

claim.[4]   Like any other litigant, Silva must, instead, allege facts supporting a claim under some principle of law.[5]

Because the Complaint fails to do so, the Court must dismiss this action. However, because it may arguably be possible for Silva to allege one or more plausible claims for relief, the Court will allow him leave to amend to attempt to do so.  In that regard, the Court will mail Silva a copy of a form complaint for use in a civil pro se proceeding, such as this one.   Should Silva choose to use the form mailed to him, he should answer **all** of the questions clearly and concisely.   More specifically, Silva must write short, plain statements telling the Court: (1) the specific basis of this Court's jurisdiction; (2) the legal right(s) he believes were violated; (3) the name of the defendant(s) who violated those right(s); (4) exactly

---

[4]In some of the documents attached to the Complaint, it is stated that "no more than (affidavits) is necessary to make the prima facie case[,]" citing *United States v. Kis*, 658 F.2d 526, 536 (7th Cir. 1981), *abrogated on other grounds in Church of Scientology of Cal. v. United States*, 506 U.S. 9 (1992).  Dkt. No. 1-1 at 8, 12, 13.   Silva appears to believe that, because he memorialized Equifax's non-response to his "Proofs of Claim" in an affidavit, he can bring this action.   First, the quote from *Kis*–about no more than an affidavit being necessary–concerns Internal Revenue Service summons enforcement proceedings.   *Kis*, 658 F.2d at 536.   That is not the situation here. Second, and perhaps more illustrative of the deficiency with Silva's reliance on an affidavit, the Seventh Circuit explained that no more than an affidavit is necessary when the affidavit establishes the elements of a prima facie case for enforcement of a summons under 26 U.S.C. § 7604.   Here, Silva points to no principle of law, statutory or otherwise, for which any affidavit he relies upon establishes the elements of a prima facie claim under that principle of law.

[5]The Court notes that, in the document containing the "Proofs of Claim," it is asserted that Equifax committed "torts."   Dkt. No. 1-1 at 3.   Other than that single reference to "torts," the record is silent as to any legal principle supporting a claim in this case.   For example, the document does not state what tort(s) were committed.   More importantly, the Complaint does not allege facts suggesting that any tort was committed.   To the extent Silva believes that Equifax committed a tort, he must allege facts supporting such a claim in an amended complaint, rather than rely on non-responses to his "Proofs of Claim."

what each defendant did or failed to do; (5) how the action or inaction of a defendant is connected to the violation of Silva's right(s); (6) what specific injury he suffered because of a defendant's conduct; and (7) what relief he seeks.

So it is clear, Silva may not rely on Equifax's alleged non-response to documents that Silva sent Equifax. All facts must be alleged in the amended complaint (if any) Silva files.

### III.   Conclusion

Silva's application to proceed *in forma pauperis*, Dkt. No. 3, is GRANTED. This action is DISMISSED with leave to amend as set forth herein.

Silva may have until **July 19, 2019** to file an amended complaint. **The Court cautions Silva that failure to file an amended complaint by July 19, 2019 may result in the automatic dismissal of this action without prejudice.**

The Clerk is directed to mail Silva a copy of form "Pro Se 1" "Complaint for a Civil Case."

IT IS SO ORDERED.

Dated: June 19, 2019 at Honolulu, Hawai'i.

Derrick K. Watson
United States District Judge